**Charles Jerry HOLBERT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42911.**

Court of Criminal Appeals of Texas.

July 8, 1970.

As Amended on Denial of Rehearing Aug. 21, 1970.

Don Metcalfe, Dallas, for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Camille Elliott, Harry J. Schulz, Jr., and W. T. Westmoreland, Jr., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for rape; the punishment, life.

The appellant, Charles Jerry Holbert, and Elven Gene Bartley, Marion Louis Goodley, Willie Earl Lipscomb, Melvin Gene Nash, and Herschel Renard Pratt, were jointly indicted for the offense of rape. Following the severance of Herschel Renard Pratt, the appellant and the other named four defendants were jointly tried and found guilty. The trial court granted Lipscomb and Nash new trials.

This is a companion case to Goodley v. State, Tex.Cr.App., 457 S.W.2d 294, and Bartley v. State, Tex.Cr.App., 457 S.W.2d 297, this day decided.

The appellant contends that he was denied the right of confrontation of witnesses against him when the trial court refused to permit him to prove on cross-examination of his co-defendant Bartley that he had a prior felony conviction and that such denial was error.

■ At the beginning of the trial, the court ruled that "No mention of prior convictions be made." This was known to the defendants at the time and they made no complaint until after the state had rested its case and while Bartley was testifying in his own behalf. It was shown in the absence of the jury that Bartley had been convicted of assault with intent to rob. Bartley was the only one of the five co-defendants to testify in his own behalf. The sole issue raised by his testimony was that of alibi. He testified that he was at home at the time of the alleged offense,

and he gave no testimony incriminating any of the other four defendants. No affirmative defensive charge was given in behalf of Holbert. There was no request for or objection to the failure to give such a charge. It appears that proof of the prior conviction against appellant's associate and co-defendant Bartley would not be of any benefit to the appellant but would tend to discredit and prejudice him before the jury. No reversible error is presented.

It is contended that: "The court erred in allowing impeachment by the state of its own witness, Herschel Pratt."

In his brief the appellant urges that:

"By continuous questioning of Pratt and reference to prior statements, the prosecutor was able to convey to the jury the following prior statements of Pratt, all of which Pratt denied:

"'* * * Nash and Holbert left us and walked to that car * * *' (referring to the victim's car)

"'* * * One of the two said they were going to rob the man * * *' (referring to defendant as one of the two)

"'* * * Nash had what looked like a gun * * *'

"'* * * Two of the group got in the back with the man and woman * * *' (the man and woman being the victims)

"'* * * that the six included Holbert * * *'

"'* * * Nash had what appeared to be a gun * * *'

"It must be remembered that Pratt never testified that defendant committed the offense and that the only incriminatory statements as to defendant came in the aforementioned questions, and not in any answers of Pratt."

When Pratt would not verify certain facts which state's counsel asserted that

Pratt had related to him during conversations pertaining to the case, the jury was retired, the state plead surprise, and state's counsel testified in support of his contention. The court then ruled Pratt was a hostile witness and permitted state's counsel to examine Pratt before the jury using leading questions in accordance with the evidence he had shown as surprise.

When his examination resumed, Pratt testified that after he and the five named defendants had left a skating rink together in a car, he never saw Nash and Holbert leave it and go to a car in a park because he was asleep; that he never heard Holbert and Nash say they were going to rob the man but he did hear someone say they were going to rob but he did not say who it was because he did not know. He denied seeing Nash with a gun but stated that he saw a man at the other car with his hands on the top of the car and later in a secluded area he heard three or four shots after he had seen a woman and five men go into some woods; and in a short time he, Holbert (appellant), Lipscomb, Nash and Bartley rode away from the scene in a car.

■ It is within the sound discretion of the trial court to permit the counsel for the state on direct examination to ask leading questions to a hostile witness or to refresh a witness's memory. 62 Tex.Jur.2d Witnesses, Sec. 148 and 150; 1 Branch's 2d Ann.P.C. Sec. 180 and 182, p. 188.

■ To constitute the impeachment of which the appellant complains, it would be necessary for the state to support the predicate laid by introducing evidence before the jury as to the prior statements of the witness Pratt. In the absence of such proof Pratt's denial of the making of such statements was not contradicted. Therefore, the matter of his impeachment is not presented. Secrist v. State, 131 Tex. Cr.R. 182, 97 S.W.2d 196; Robbins v. State, 162 Tex.Cr.R. 107, 282 S.W.2d 711; Lopez v. State, 171 Tex.Cr.R. 552, 352 S.W.2d 106; Bates v. State, Tex.Cr.App., 409 S.W. 2d 860.

It is concluded that the trial court under the facts presented did not err in permitting the state to examine the witness Pratt as shown.

The third ground of error is that the trial court denied the appellant's motion for a severance.

■ This Court has held that before a motion for severance is granted as a matter of right the accused must show that a co-defendant has an admissible prior conviction while the accused (movant) does not. Johnson v. State, Tex.Cr.App., 449 S.W.2d 237; Robinson v. State, Tex.Cr.App., 449 S.W.2d 239; and Thornton v. State, Tex. Cr.App., 451 S.W.2d 898. The third ground of error is overruled.

The appellant contends that: "The court erred in allowing the prosecutor in jury argument to prejudicially refer to defendant as a 'murderer.' "

This contention arose during the following argument of state's counsel:

"She was laid nude on the ground. Her purse was crudely placed under the lower portion of her body to elevate her and five times she told you that her sexual organs were penetrated by the sexual organs of these murderers, rapists and robbers—

"Mr. Metcalf: Your Honor, we will object to the use of the words 'murderers and robbers' as it applies to the Defendant Jerry Holbert and all others, such as is outside of the testimony and has vast implications. We feel it is prejudicial and no facts in evidence—

"The Court: Objection overruled.

"Mr. Metcalf: Note our exception, please."

The prosecutrix testified that after the car was stopped in a secluded area on a gravel road they pulled her out on one side and took Robert Deegels out on the other side; that three men went with her and one of the two who went with Robert had the

pistol; that after going a short distance and while about ten feet from Robert, but could not see him, she heard two shots; that one of the two men with Robert then came to where she was and said, "He shot the m_____ f_____ in the head"; and that after the men had assaulted her and left in her car, she dressed and went to Robert but could not arouse him though he appeared to be alive. He died that day.

It is concluded that from all the facts and circumstances in evidence, the use of the word mentioned did not constitute reversible error. Marshall v. State, 104 Tex.Cr.R. 619, 286 S.W. 214; Jackson v. State, 118 Tex.Cr.R. 443, 42 S.W.2d 433; Doswell v. State, 158 Tex.Cr.R. 447, 256 S.W.2d 416; Garcia v. State, 162 Tex.Cr.R. 594, 288 S.W.2d 513.

The fourth ground of error is overruled.

The fifth ground of error is that: "The court erred in failing to grant a mistrial when the attorney (Caperton) for co-defendant, Marion Goodley, commented on the failure of defendant (Holbert) to testify, thereby violating defendant's right to remain silent."

At the punishment hearing before the jury, counsel Caperton, arguing for co-defendant Goodley said that he would like to be a special prosecutor in the murder or robbery case and be able to call "them" (the two robbers and two murderers) to the stand and get them to tell what Goodley had to do with it.

The objection that Caperton commented on the defendant's failure to testify was sustained and the jury was instructed not to consider Caperton's remarks against any of the defendants, and the motion for mistrial was overruled.

The name of the appellant and the offense in this case were not called. In light of the court's action in sustaining the objection and instructing the jury not to consider the remarks, it is concluded that no reversible error is shown. Grantom v. State, Tex.Cr.App., 415 S.W.2d 664. The fifth ground of error is overruled.

In his sixth ground of error the appellant contends, "The court erred in allowing the prosecutor to comment on the defendant's failure to testify by stating that he had failed to show himself worthy of concern, thereby violating the defendant's right to remain silent."

During the jury argument on punishment, the prosecutor argued as follows: "I am asking you to not let your hearts out in any concern for these five men because none of them have shown themselves to be worthy of concern."

Appellant contends that the above jury argument is in violation of Article 38.08, Vernon's Ann.C.C.P. This Court has held that for jury argument to violate Article 38.08, supra, "the language used must be looked to from the standpoint of the jury, and the implication that the language used had reference to the defendant's failure to testify must be a necessary one. It is not sufficient that the language might be construed as an implied or indirect allusion thereto." Suber v. State, Tex.Cr.App., 440 S.W.2d 293; Harrington v. State, Tex.Cr.App., 424 S.W.2d 237; Ramos v. State, Tex.Cr.App., 419 S.W.2d 359; Richardson v. State, 172 Tex.Cr.R. 299, 356 S.W.2d 676; and Johnson v. State, 167 Tex.Cr.R. 598, 322 S.W.2d 540.

The statement by counsel for the state in this case appears to be an attempt to draw the jury's attention to the nature and gravity of the offense instead of a comment on the failure to testify.

The appellant's sixth ground of error is overruled.

Appellant in his seventh ground of error complains of the following jury arguments by counsel for the state:

"Pictures and clothing, they have seen them all in pre-trial discovery. We stood knee deep in evidence * * *"

And * * *

"About this matter of pictures, I want to get the business cleared up here. There were some pictures taken of the scene, and it has been intimated, they have suggested to you that we have concealed these pictures. Now, nothing could be further from the truth. Before this case was tried, one or two of the lawyers, and I don't recall which one it was, filed a motion for discovery. * * * This Motion for Discovery requested that we reveal to, the Motion, to the person who made the Motion, any physical evidence which we had. Pictures would have been classified as physical evidence and so we arranged for a meeting place and we invited the other lawyers who had not even filed a Motion. We invited them to come and look at the physical evidence. We showed them the pictures, so help me Lucifer. They are right there. They could have put them in evidence any time they wanted to; so when it gets to the point where they are going to stand up here and try to pretend to a Jury that we are dishonest, I am going to answer it."

These arguments were preceded by the following arguments by counsel for three of the defendants other than the appellant:

"Mr. Watts has got a bunch of pictures which we haven't seen over here."

And * * *

"Maybe she thought that is what happened, but let me tell you that Joe Hendley, he would not sit here if he had a woman running ravished to a house in the dead of the night with her clothes torn off her, obviously beaten. You think those two people who supposedly let her in, that they wouldn't have been here? You bet they would have been here. They would have been right here in the courtroom. They would have been in here to tell you about her condition or her clothes would have been submitted in evidence to show you the threads and the torn places and the mud on them."

And * * *

"Now, don't you know unless she was supposedly undressed, not touching anything, not struggling, that there would be some clothes and they would have grass stains on them? It was misting out there. We know this was a dirt road out there. No where are some clothes with those, with dirt that would match up with the dirt out there in that area.

"Where are the pictures that we have heard about? I don't mean to be gross about this, but if a picture was where it was, it seems to be it would have some physical evidence on it. Five colored men on top of her, is that picture here, of five of them raping her, where is that picture? Where are the torn clothes that were ripped off her body?"

Counsel for the appellant did not at any time object to the above arguments by counsel for the co-defendants nor did he request the trial court to prohibit the state from arguing in reply to his co-counsel's argument.[1]

■ The argument by counsel for the state, although it had reference to matter not in evidence, was in response to and was invited by the argument of counsel for the defense and it does not constitute reversible error. 56 Tex.Jur.2d, Trial, Sec. 310, p. 663; 1 Branch, Sec. 383, p. 403, and cases cited.

Ground of error number seven is overruled.

■ Error is urged in that the trial court allowed the state to bolster the credibility of the prosecutrix by stating that defense counsel had her grand jury testimony.

---

1. Compare DeLuna v. United States, 5 Cir., 308 F.2d 140, 1 A.L.R.3d 969 where counsel for a co-defendant commented on the failure of the appellant to testify over the strenuous and continuous objections of counsel for the appellant.

It appears that the appellant sought to impeach the prosecutrix by showing by her testimony at a previous hearing that she did dance at a club before midnight on the night of the alleged rape about 3 a. m. She had testified that she did not recall dancing at that time. At this time appellant complained of not having a copy of the testimony given by her at a previous hearing which had been ordered furnished by the court. At this time state's counsel said: "Well, they have the grand jury testimony. We gave them, gave it to them." Neither of the five defendants were at the club in question at any time during the night in question. No error is perceived. Ground of error number eight is overruled.

The ninth ground is that: "The court erred in allowing the prosecutor in jury argument to inject new and prejudicial facts by stating that materials in the vehicle used in the offense were not susceptible to fingerprints."

In his brief the appellant complains of the following jury argument at the guilt stage by the prosecutor:

"You take a car of a '65 Chevrolet. I don't own one, but it is a reasonable deduction that they are all made alike. They have padded dashes. There is the area that was talked about between the windshield and the back seat. This is a flat area, as I recall, the back seat of a car that is covered in cloth. The dash is padded. Then, the inside of the doors slant and have vinyl. These are not materials that are susceptible to prints. The outside, we have heard—"

Before the above jury argument was made defense counsel Koons had argued as follows:

"They have got three detectives listed on that list and we read it off to you, and we had to call the only one that came in, and I said, 'How about fingerprints on that car?' And he said, 'Well,

I don't know. I think it rained.' Now you know it didn't rain on the rear-view mirror or, you know, it didn't rain all over the inside of that car. You all have left your windows down when it rained. I have, and it is not needed, but you are entitled to use your common sense on the jury, and you know what gets wet and what doesn't—

"You know there were plenty of fingerprints in that car, and I submit to you that they lifted fingerprints and the simple, reasonable deduction from the evidence is that they lifted them and they don't get them to match. We didn't have anybody down here to say it in any way, that they lifted the fingerprints or that they were smudged or whatever it was."

Officer Thomason, called by the appellant as a witness, testified on direct examination, without objection by his codefendants, that the car of the prosecutrix was dusted for fingerprints by the crime lab but there had been a heavy rain that night and they were unable to get any prints. Although, he later testified that he had no personal knowledge of the fingerprint dusting.

From the evidence with the state's argument following that of defense counsel as shown it appears that no reversible error is shown. The ninth ground of error is overruled.

The failure of the court to charge on circumstantial evidence is urged as the tenth ground of error.

The prosecutrix testified in part as follows:

"Q Were you afraid you would be killed?

"A Yes.

"Q How many of them raped you?

"A It was five."

On cross-examination of the prosecutrix by appellant's counsel she testified as follows:

"Q Now then, you said that five of them, I believe, had intercourse with you?

"A Yes.

"Q And I believe, you are not able to identify as individuals all five who are alleged to have did that?

"A Yes. I can identify every last one of them.

"Q You can identify every last one of them?

"A Yes. This one here.

"Q That was in here?

"A Yes.

"Q All right. Now, Earnestine, have you ever made this statement during this previous hearing that you knew that you had been raped five times, but you could not identify all five individuals as having raped you?

"A Not that I can recall. I don't know. I wouldn't say.

"Q You couldn't say whether you made that statement or not?

"A That's right.

"Q But, in any event, are you testifying now that these five boys sitting here are the ones that, each one of them individually raped you?

"A Yes, I am."

The testimony of the co-defendant Pratt places the appellant and the other co-defendants together before and at the scene of the alleged rape.

■ The evidence was sufficiently direct not to require a charge on circumstantial evidence. Smith v. State, Tex.Cr.App., 437 S.W.2d 835. The tenth ground of error is overruled.

■ Error is urged on the ground that the court refused to grant a mistrial after the judge commented before the jury that the state's witness Pratt was an "obviously adverse" witness.

After considerable testimony by the witness Pratt an argument arose between the state and the appellant as to whether the state was trying to impeach its own witness.

During this time the court said:

"The witness is obviously adverse, and the State has a right, I think, to ask an obviously adverse witness a leading question."

Following a hearing in the absence of the jury on whether the state was surprised in the testimony of Pratt, the court on the return of the jury instructed them as follows:

"Ladies and Gentlemen of the Jury, you will ignore the remark of the Court in which he had something to say about the witness being a reluctant witness or a hostile witness. The Court had no right to comment on the demeanor of the witness or testify in any way and the Court has not intended to do so, but if the Court has, you please ignore the Court's remarks or the Court's attitude if the Court appears to have this attitude, which the Court doesn't or didn't intend to have this attitude."

In light of the instructions to the jury and the record, it is concluded that no error is presented. The eleventh ground of error is overruled.

The judgment is affirmed.