## MITCHELL v. STATE.

### No. 20385.

Court of Criminal Appeals of Texas.

April 26, 1939.

Jones & Jones and G. De Graffenried, all of Marshall, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

KRUEGER, Judge.

The conviction is for murder without malice; the punishment assessed is confinement in the state penitentiary for a term of five years.

The state's testimony shows that on the 1st day of September, 1938, while the deceased was in his cotton field with Mr. Williams checking cotton land for the County Agent, appellant came to a point near a tree under which Williams, the deceased and one or two other persons were sitting looking at a map. Appellant called to the deceased to come to him, that he would like to see him for a minute. The deceased replied that he was busy just then but would see him in a very few minutes. When Mr. Williams and one of the negroes started toward Williams' car, the deceased went to see what appellant wanted. Williams, while near his car, heard some loud talking. He turned and saw appellant shoot the deceased, who at the time had no weapon of any kind in his hand or on his person. Williams then rushed over and asked appellant not to again shoot the deceased, who was then lying on the ground. The appellant, however, walked over and fired three more shots into the body.

Appellant testified in his own behalf and said that about a week prior thereto he had seen his wife and the deceased sitting on a log in a pasture, embracing each other. That on the day preceding the killing, he passed the deceased's home about 11 p. m. and heard the deceased say to Booker Collier and Henry Dukes: "Old Willie thought he was smart; I told him I was going to Jefferson and stay three weeks. I put the swing on him; I told his wife to go to the country * * * and in 20 minutes after she got there I was there and I kept her out every night she was down there except one half night. We stayed at Hattie McCoy's one night. If that son-of-a-gun messes with me I will do something to him." Appellant also told of a threat made by the deceased against him on another occasion and of which he had been informed by a friend. He stated that he went to see appellant about those threats and to ask him why he had kept his wife. That when he started asking him about these matters, the deceased remarked: "Negro, you don't

know a God damned thing about me" and struck him with his fist. Appellant then stated that the deceased grabbed him and threw his arm around his neck, and when he saw he could not get loose, he shot him five times. The foregoing is a fair synopsis of the facts proved, as gathered from the record.

The court, in his charge, instructed the jury on the law of murder with and without malice and on self-defense. Appellant addressed two objections to the court's charge. One related to the court's charge on murder without malice and the other related to the instruction on self-defense. These objections are entirely too general; they do not specifically point out any error as is required by Art. 658, C.C.P., Vernon's Ann.C.C.P. art. 658.

He also requested eight special instructions to the effect that if the jury believed from the evidence that, by reason of immoral relations existing between the wife of the defendant and the deceased, there was produced in the mind of the defendant such a degree of anger, rage, resentment or terror as might be sufficient to render the mind of a person of ordinary temper incapable of cool reflection, or if they had a reasonable doubt thereof, then and in that event they could not find him guilty of a greater degree of homicide than murder without malice.

The court in his main charge had instructed the jury relative thereto and declined to give appellant's specially requested instruction, to which he reserved exceptions. We need not determine whether or not error was committed by the court in this respect, since the jury only found appellant guilty of murder without malice. Hence he has no just ground of complaint.

By an unauthenticated bill of exception, appellant complains of certain remarks by the prosecuting attorney. This court cannot consider the same in the absence of its approval by the judge.

By bill number two, appellant complains of the following argument by the district attorney in his closing speech to the jury: "They have asked about other witnesses being here; why did they not produce this boy's wife, Lena Mitchell, if she was as brazen as they say. * * * The law erects every safeguard in the world around a defendant, and the law does not allow the State of Texas to put her on the stand * * to tell what she knew. If what the defendant says is true there could not be any reason in the world for her denying what he swore she did. * * *"

The court qualified the bill and states that one of appellant's attorneys, in his argument, severely criticized the state for not offering the defendant's wife as a witness. That the argument complained of was in reply thereto. There certainly was no error under these circumstances. The state could not, under the law, use the defendant's wife as a witness, but the appellant could, and if he felt that her testimony would be detrimental to his defense and by reason thereof declined to use her as a witness, he might have adopted a wiser course by remaining silent on the subject.

Appellant's attorneys have filed a very able brief which we have read with much interest, but it has failed to convince us that any error was committed upon the trial of the case.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.