W. R. NEWTON V. THE STATE.

No. 23637. Delivered April 23, 1947.
Rehearing Denied June 28, 1947.

*Dennis Zimmerman,* of Tulia, *E. T. Miller,* of Amarillo, *Frank R. Day,* of Plainview, *E. A. Camp,* and *E. B. Camp,* both of Cameron, and *R. M. Lyles,* of Angleton, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted for an assault with intent to murder Roy E. Hunt and by the jury assessed a term of two years in the penitentiary, and he appeals therefrom.

The main facts here proven are practically the same as those set forth in a previous trial and appealed to this court. See Newton v. State, (147 Texas Crim. Rep. 400) 180 S. W. (2d) 946. However, there are some few new facts shown and the omission of some further facts herein, both relating to the defense of alibi.

Relative to the facts, it is shown by a reproduction of Dr. Hunt's testimony given in the former trial that on the night in question, he saw Mrs. Ruth Newton at about midnight in a car on a road a short distance from the town of Littlefield; that upon her request, he passed in front of the car in which she was seated, and she flashed on the lights; that appellant appeared from behind the car and said, "Hands up. Don't you know that is a married woman?" He then fired two shots into Hunt's body and he fell, whereupon appellant fired again, missing Hunt; that after a short time appellant and his wife drove away and Hunt went to Littlefield, where he was found to be shot, once through the chest and once through the stomach, both being serious wounds. Two witnesses identified Mrs. Newton as being the woman who used a telephone at McCormick's Filling Station in Littlefield about midnight on the night that Dr. Hunt was shot. Testimony to the same effect was given by a further witness who was positive in his identification of Mrs. Newton. Two other witnesses told of the incident of a lady using the 'phone at such time and place but merely gave it as their judgment that the lady closely resembled Mrs. Newton. As opposed to these witnesses, appellant presented an array of witnesses who testified to an alibi, showing his presence at Cameron up to an early hour of the evening, and his further presence at Houston during the night and early morning hours of the day of May 21, 1942, Dr. Hunt having been shot about midnight of May 20, 1942. Thus the issue was sharply drawn, and the jury were called upon to determine the conflict between these two lines of testimony.

Appellant complains in Bill of Exceptions No. 1 because of the fact that through inadvertence, after the jury had been empaneled, eleven certain witnesses were heard before the jury, at which time it was discovered that the indictment had not been read or presented to the jury and the defendant had not been called upon to plead, nor had he pleaded before the jury, whereupon the trial court stated, "We overlooked the indictment, gentlemen; it just escaped me that the indictment hadn't been read", at which point the appellant objected to the reading of such indictment at such stage of the proceedings, which objection was by the court overruled and the State proceeded with the reading of the indictment before the jury and the defendant entered his plea of not guilty. The State then offered to re-introduce all of its previously introduced testimony by again placing the witnesses upon the stand and interrogating them, whereupon appellant's attorney stated that he would agree that the jury could consider the testimony that

had been introduced before the reading of the indictment just as though it were re-introduced, and the appellant's plea without again hearing such testimony from the witnesses. Thereupon, appellant himself stated that he agreed to such proceeding and all parties then waived the re-introduction of such testimony, but appellant still objected and excepted to the trial court's action in allowing the indictment to be read at such stage of the trial, as well as appellant being then called upon to plead thereto. We think the appellant waived his right to have this evidence re-introduced. One accused of crime can waive any right except the right of trial by jury in a capital case. See Art. 11, Vernon's Ann. Tex. C. C. P., Vol. 1; also Terwillinger v. State, 191 S. W. (2d) 481, and cases cited.

Bill of Exceptions No. 2 relates to the reproduction of the testimony of Dr. Roy E. Hunt, who had died after the first trial hereof and before the present trial. It was shown that the testimony of this witness had been taken down by the court reporter at the former trial herein in August, 1943, and had been transcribed by the reporter who was tendered as a witness and was allowed to read from his transcribed notes. That such a procedure was proper, see Robertson v. State, 63 Tex. Cr. R. 216, 142 S. W. 533; also 12 Tex. Jur. p. 528, and cases there cited.

But, it is contended that it was nowhere shown in such bill that the transcribed version of Dr. Hunt's testimony was a correct version thereof. While such a statement might be inferred from the testimony of the court reporter found in the bill, still we find in the statement of facts a further statement by the reporter in which he testifies:

"I correctly reported that testimony and I correctly transcribed my shorthand notes of Dr. Hunt's testimony."

We are of the opinion that such testimony was correctly admitted before the jury. See Robertson v. State, supra.

Appellant complains in his Bill No. 3 because of the fact that Dr. Hunt was asked the question: "Doctor, state to the jury what was your occasion for going out on the highway at the time you were shot?" To which the testimony shows he answered: "I went out to see Mrs. Newton." Appellant objected to this answer and requested the court to withdraw same from the jury, which the court refused to do. The gist of the objection was that such was an unknown and undisclosed

motive upon the part of Dr. Hunt and was not shown to have been brought to the notice of appellant. We think the trial court was correct in its ruling. It is shown by the reproduction of Dr. Hunt's testimony that he went out on the highway near the town of Littlefield in response to a telephone call. When he got there he found Mrs. Newton in a two-seated car, and in a few moments he was shot. That he had just previously had a telephone conversation with Mrs. Newton; that from 8:30 to 12:00 o'clock midnight of the night he was shot he had three conversations with her. He had these conversations over the 'phone with Mrs. Newton, and in response to the last conversation, "he went out to meet Mrs. Newton"; he found her there and was shot by her husband immediately upon greeting her. We think the testimony was admissible as being res gestae of the transaction in which appellant and his wife are jointly charged with this assault upon Dr. Hunt, although a severance had been granted and Dr. Newton alone is upon trial here. Again, we think the act of Mrs. Newton herein is the act of appellant also, and both being actions leading to the consummation of a common design; the act of one was the act of the other in furtherance of such design. Furthermore, we do not think the answer of the witness impinged upon or in any way affected the appellant's defense, which was an alibi, and such testimony was in no way binding upon the appellant. Again, it is shown by his testimony that Dr. Hunt did meet Mrs. Newton, and we see no reason why his reason for going out there could in any way have affected appellant's presentation of his alibi defense.

Bill No. 4 merely objects to the statement of Dr. Hunt, shown by his reproduced testimony, that when he left his home to go out near Littlefield, his wife was at home. We see no merit in this bill.

Bill No. 5 relates to a remark made by the District Attorney while interrogating the witness Smith who had testified that he had talked to one of appellant's attorneys shortly before 12:00 o'clock on May 21st, the day of the shooting the night before, and the witness was asked if his attorney said anything about having talked to appellant at 8:00 o'clock that morning, and the witness answered, "There wasn't anything said." Whereupon, the District Attorney said, "No, because he was evidently looking for Dr. Newton himself." This remark perhaps had better been left unsaid, but under the circumstances herein we do not see any particular harm that same caused. While the alibi itself shows a conversation between such attorney and appellant at Houston at about 8:00 o'clock in the

morning, it is also shown by testimony that the appellant's whereabouts were possibly not known to such attorney until somewhat later in the day. The bill will be overruled.

To the same effect is our ruling on Bill No. 6.

Bill No. 7 relates to a statement of the District Attorney when he attempted to show the drunken condition of a defense witness at the time he was testifying about. Upon objection to the question as improper, the District Attorney stated: "We will prove it, your Honor." Which objection was by the court overruled and the witness having previously answered, "Well, no, nobody had a drink." We think the incident was closed, there being no further matters shown in the bill. It will be overruled.

Bill No. 8 relates to a ticket evidently made at the telephone office in Houston offered for the purpose of showing a conversation had by appellant with an attorney in Cameron on the morning after the midnight shooting of Dr. Hunt. There was an annotation on such ticket of the time as "8:48 A.M." and on the back of such ticket were certain stamped places made with a machine called the calculograph, which machine made marks which evidently indicated that such conversation took place at "7:50 A.M." This was shown by a witness without a recorded objection. However, the witness was then asked by appellant's attorney to explain how the operator could have made a mistake in recording this call at 8:48 A.M., and the machine recorded the call at 7:50 A.M. This the witness was not allowed to do under the objection upon the part of the State that the ticket speaks for itself. Whereupon, the witness was asked: "Which is the more accurate (meaning the operator or the calculograph machine)?" Which question the witness was not allowed to answer, but had he been thus allowed, he would have answered that the machine was the more accurate. In any event, we think these proceedings called for the conclusion of the witness and his opinion which the jury had a right to decide for themselves in the light of the introduction of this slip before them.

Bill No. 9 complains of certain testimony of one, George Porcher, which was elicited from him by the State. We have carefully gone over the statement of facts from beginning to end and do not find any testimony of George Porcher therein. The statement of facts is certified as being *all* the testimony introduced upon the trial of this cause, and we do not find therein any statement of any kind of one, George Porcher.

However, it is shown from the bill that the trial court in his charge, as well as orally, withdrew all the testimony of George Porcher and again orally instructed them not to consider any of Porcher's testimony for any purpose, as well as the remarks of the District Attorney as complained of in Bill No. 6 above. We think the court's instruction could and did remove any error, if same there was, in thus withdrawing from the jury all proceedings relative to the testimony of Porcher.

Bill No. 10 relates to the mother of appellant, Mrs. Matilda Newton, being asked while on the witness stand: "Where is Mrs. Newton now?" Thereupon she answered: "I don't know whether she is in Happy or Plainview or here," after saying that she had made the trip to West Texas and the witness knew she was there. The State then asked the following questions: "And she could come here and sit on that witness stand if she wanted to?" Appellant objected to such question as improper, but the trial court made no ruling thereon, whereupon it seems that a picture of Mrs. Newton was endeavored to be introduced by appellant, but the witness, Mrs. Matilda Newton, not having satisfactorily identified the picture and it being one made in 1933, the State objected to the entire testimony, which objection was sustained, and appellant excepted. From our understanding of this bill, appellant endeavored to introduce a picture of his wife taken in 1933, and the State showed that the wife was present in person near the scene of the trial and could have been present in person rather than in a picture taken in 1933. We see no error in such a position, nor in the statement of the District Attorney.

It is contended that the court's charge is incorrect in that it failed to require an intent to kill before a conviction herein could be had. Paragraph 5 thereof does expressly require that before appellant could be convicted, he must have shot Dr. Hunt with the specific intent to kill him, both in the charge of an assault with and without malice. Again, appellant requested the court to give his Special Charge No. 1, which requested charge reads as follows:

"Unless you find and believe from the evidence beyond a reasonable doubt that the defendant, Dr. Newton, was not at Houston, Texas, at the time of the shooting, you will acquit the defendant."

This special charge was given by the careful trial judge. Also, in his original charge, the trial court instructed the jury as follows:

"Now, if you have a reasonable doubt as to whether defendant was present at the place where the offense was committed, at the time of commission thereof, if any such was committed, you will give the defendant the benefit of such doubt and acquit him, and say by your verdict not guilty."

This case, upon the facts, presents two horns of a dilemma. Dr. Hunt places appellant and wife at the scene of the shooting, and witnesses place Mrs. Newton in Littlefield just prior to that time, while an array of other witnesses place appellant at such time at a remote point rendering it improbable for him to have been present at Littlefield and committed this offense. This matter was presented to a jury and they had the responsibility of deciding from whom the true facts came, and under the law we are bound thereby.

We see no error reflected in the record presented, and the judgment will therefore be affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant's motion stresses the complaint brought forward in bill of exception number two that no sufficient predicate was laid for the reproduction of the evidence of Dr. Hunt. No specific objection was pointed out wherein the predicate was thought to be lacking, but only a general objection. It is now urged that the defect was in the omission of the court reporter to testify that he correctly reported Dr. Hunt's evidence on the former trial. There appears in our original opinion a quoted statement of the court reporter as to Dr. Hunt's testimony, as follows: "I correctly reported that testimony and I correctly transcribed my shorthand notes of Dr. Hunt's testimony."

We have been rather severely brought to task regarding the above statement, it being averred in the motion that appellant's "counsel have read and reread the statement of facts and have failed to find where the court reporter gave the testimony attributed to him by the quotation in the court's opinion. In fact, and with profound respect for the court, appellant's counsel submits that the quoted testimony * * * is not to be found in the statement of facts." If counsel who prepared the motion will read the statement of facts one more time he will find on page 75 where the court reporter was recalled to the witness stand and used the exact language found in our opinion. The

508

statement that he correctly reported the evidence is not found in bill of exception number two, and if said bill recited that it contained all the evidence on the predicate we would be confronted with a situation where the statement of facts and the bill might be in conflict, in which event the bill would control. There being no such recital in the bill in question, and in view of the fact that any omission in regard to the predicate was covered and cured by the court reporter upon his recall to the stand, we adhere to the ruling that the trial court committed no error in permitting the reproduction of Dr. Hunt's testimony.

Appellant further insists in his motion for rehearing that bill of exception number seven reflects reversible error. On account of the stress laid upon said bill we copy same in full with exception of the approval of the trial judge and caption of the bill.

"Be it remembered, upon the trial of the above entitled and numbered cause, and while the witness Charles A. Weathered, a witness upon behalf of defendant, was being cross-examined by Harold M. LaFont, the District Attorney representing the State in this cause, and after said witness had testified that he had instructed one George Porcher or some other clerk at the hotel where he was staying at Corpus Christi, Texas, that he was not to call him to the telephone, and to keep his mail; that he was going out on a hunting trip, and after he had denied making numerous statements to the said George Porcher, and stated that he had talked to the said witness George Porcher within the last few days, and learned that he was subpoenaed to testify on this trial, and had testified that he, in company with three or four other men, went to Littlefield to George Porcher's father's house on the previous night, and tried to talk to him over there, the District Attorney propounded said witness the following question: "Q. You were all drunk at the time, weren't you?" To which said witness replied: "A. Well, no, nobody had a drink."

"Whereupon the defendant objected to said remark as being highly improper. Whereupon said District Attorney, in the presence and hearing of the jury, stated: 'We will prove it, Your Honor.'

"Whereupon the defendant objected to all of said conduct and statement on the part of said District Attorney, for the reason that even if the parties who went to Littlefield were drunk, it would not be binding upon the defendant, who knew

nothing about it and had nothing to do with it, and it was drawing extraneous matters into the record.

"Which objection was by the Court overruled, with the statement: 'That may be true, but still it might affect that witness's testimony.'

"And to which action and ruling of the Court, as well as the conduct and statement on the part of the District Attorney, the defendant then and there, in open Court, excepted.

"And be it further remembered, that no other evidence was offered showing or tending in any degree to show that the witness Charles A. Weathered or any one who accompanied him to Littlefield on the occasion referred to by said District Attorney were either drunk or drinking.

"And to all of which action and ruling of the Court, the defendant here now excepts, and tenders this, his bill of exceptions, and asks that the same be examined, approved, allowed as true, and made a part of the record in this cause, which is now here accordingly done."

We first dispose of appellant's contention that the bill presents error in that it shows the trial court violated Art. 707 C. C. P., which reads as follows: "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceedings previous to the return of a verdict, make any remark calculated to convey to the jury his opinion of the case."

We have examined the authorities relied upon by appellant and are in accord with their holding that a violation of this statute will ordinarily result in a reversal if the point is properly preserved by an exception to the court's remark. We are inclined to the view that the bill before us is insufficient to save exception to the statement made by the court in not sustaining objection to the questions and remark of the District Attorney. Before discussing that feature of the bill we observe that George Porcher had testified to something before the jury. We know this because the court in his charge withdrew the "entire testimony" of said witness from the consideration of the jury. Notwithstanding the bill recites that Weathered "had denied making *numerous* statements to the said George Porcher" this court is left completely in the dark as to what statements were

attributed to Weathered, in order that this court might determine whether the question propounded to Weathered "was drawing extraneous matters into the record." This, and the further objection that if the witness was drunk it would not be binding on appellant, were the only objections urged. The objection does not supply the facts which would control in determining the question.

Appellant briefs the point upon the proposition that it was an effort on the part of the State to impeach Weathered upon a "collateral" matter by showing that he was drunk at the time of the conversation with Porcher.

We here adopt from Branch's Ann. Tex. P. C., p. 108, Sec. 178, the following:

"The interest, motives, or animus of a witness are not regarded as matters collateral to the issue. O'Neal v. State, 57 Texas Crim. Rep. 249, 122 S. W. 386. Earle v. State, 142 S. W. 1182. Pope v. State, 143 S. W. 612. Cain v. State, 153 S. W. 153. Edwards v. State, 172 S. W. 233. Latham v. State, 172 S. W. 808."

If the statements attributed to Weathered in his conversation with Porcher showed his "interest, motives or animus" as a witness (as to which we are completely inadvised) the inquiry about said statements would not be upon a "collateral" matter, nor would it be "drawing extraneous matters into the record." If among the "numerous statements" which he denied making to Porcher there were those which characterized Weathered in the particulars mentioned then an inquiry to said witness as to whether he was not intoxicated at the time of the conversation with Porcher was permissible as testing the memory of the witness and his capacity for accurate recollection as to the occurrence under investigation. Branch's Ann. Tex. P. C., p. 23, Sec. 43, and cases there cited. Graham v. State, 125 Tex. Cr. R. 531, 69 S. W. (2d) 73-79. It is impossible for us to say from the bill before us that the inquiry by the District Attorney of Weathered as to whether he was drunk on the occasion mentioned was improper. Of course, it was improper for him to make the remark he did when objection was interposed to his question. However, in view of the fact that he made no further effort to introduce evidence on the question of whether Weathered was drunk at the time mentioned, and the general unsatisfactory condition of the bill, together with the fact that all of Porcher's testimony was withdrawn from the

consideration of the jury, makes us unwilling to hold that the remark of the District Attorney presents reversible error.

The motion for rehearing is overruled.